IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:03CV56-2-V
(5:99CR11-V)


ANTHONY JEROME DANIELS,        )
    Petitioner,            )
                               )
      v.                   )        O R D E R
                               )
UNITED STATES OF AMERICA,       )
    Respondent.            )
_____)


**THIS MATTER** is before this Court upon petitioner's "Motion
to Vacate, Set Aside, or Correct" under 28 U.S.C. §2255," filed
May 5, 2003; on the "Government's Response To Defendant's Peti-
tion [A]nd Motion For Summary Judgment," filed June 10, 2003; and
on the petitioner's two "Traverse[s]," filed June 30 and August
21, 2003. After careful consideration of these matters, for the
reasons stated herein, and for the further reasons set forth in
the government's Response, the government's Motion for Summary
Judgment will be <u>granted</u>; and the petitioner's Motion to Vacate
will be <u>denied</u> and <u>dismissed</u>.

## I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Pertinent to the Motion to Vacate, the record reflects that
on March 2, 1999, a six-Count Bill of Indictment was filed, char-
ging the petitioner (along with 14 others) with having conspired
to possess with the intent to distribute powder cocaine, cocaine

base and marijuana, all in violation of 21 U.S.C. §§841(a)(1) and 846 (Count One). On May 27, 1999, the government filed a Notice pursuant to 21 U.S.C. §851, asserting that if convicted of the pending charge, the petitioner could be subjected to an enhanced sentence under §841 by virtue of his prior felony convictions for possession of cocaine and possession with intent to sell and deliver cocaine.

Although the petitioner initially pled "not guilty," on July 16, 1999, he entered into a written Plea Agreement with the government, by which he promised to plead guilty to the subject conspiracy charge. In exchange for that promise, the government agreed to withdraw its §851 Notice and to forego pursuing an enhanced statutory sentence for the petitioner.

In addition to the above promises, the parties both agreed, inter alia, that the petitioner's sentence should be calculated on the basis of his involvement with more than 500 grams but less than 1.5 kilograms of cocaine base; that the corresponding offense level for that amount of cocaine base was 36; and that no other enhancements under Chapter 2 or 3 were applicable.

With regard to the petitioner's post-conviction rights, the Plea Agreement reflects his waiver of his right to directly appeal or collaterally challenge either his conviction or sentence. However, the Agreement expressly provided that the subject waiver did not apply to claims of ineffective assistance of counsel or prosecutorial misconduct which could be raised on collateral

review.  Last, the Plea Agreement provided that in the event the petitioner rendered substantial assistance to the government, the government would seek a reduced sentence for him under U.S.S.G. §5K1.1.

Next, on July 21, 1999, the petitioner appeared before the Court for his Plea & Rule 11 Hearing.  On that occasion, the Court engaged the petitioner in its standard, lengthy colloquy to ensure that his guilty plea was being freely and intelligently tendered.  In response to the Court's numerous questions, the petitioner swore that he had received a copy of the Indictment and had discussed the contents of that document with his attorney.  The petitioner also swore that he fully understood the charge and its corresponding penalties.

Equally critically, the petitioner swore that he understood the terms of his Plea Agreement; and that he had taken enough time to discuss possible defenses with his attorney.  In fact, the petitioner admitted to the Court that he was guilty of the subject charge, and he said that he regretted that he had chosen to sell drugs.  Last, the petitioner told the Court that he was satisfied with the services of his attorney.

Accordingly, the Court determined that the petitioner's guilty plea was knowingly and freely made, and so the Court accepted that plea.  Following the entry of his guilty plea, the petitioner was released from detention on an unsecured bond so that he could provide assistance to the government.

Eventually, the Court put the petitioner's case on its calendar for a sentencing hearing. However, on April 7, 2000, defense counsel filed a "Motion For Downward Departure . . . . " By that Motion, defense counsel asked the Court to depart down from Criminal History Category VI to Category II or IV because the petitioner's 21 criminal history points "substantially over-represent[ed] the seriousness of his conduct."

Ironically, on June 2, 2000, the government filed a Motion to Revoke Bond, asserting that since the time of his release from pretrial detention, the petitioner had been charged on two separate occasions with driving-related violations; that one such violation had resulted in a conviction; and that he had also sustained a third series of charges for second-degree trespass, resisting obstructing and delaying an officer, and drunk and disruptive conduct. Such Motion also asserted that the petitioner had missed three scheduled office visits with the U.S. Probation Office; that he had not maintained employment; and that he had failed to fully comply with his out-patient drug treatment therapy.

Subsequently, the Probation Office filed a violation report reflecting that the petitioner also had been charged with another driving violation, and was then in custody for charges of assault on a female and breaking or entering. Accordingly, the Court revoked the petitioner's bond.

Ultimately, on November 20, 2000, the Court held the

petitioner's Factual Basis & Sentencing Hearing.  At the outset
of that proceeding, defense counsel advised that the petitioner
had some concerns about the impact that the recent ruling in
Apprendi v. New Jersey, 530 U.S. 466 (2000)[1] might have had on
his case, and so counsel asked the Court to question the peti-
tioner in order to determine whether he wanted to proceed under
his guilty plea, or to withdraw the plea and proceed to a jury
trial.

At that point, counsel for the government argued that in
light of the petitioner's concessions and admissions, no Apprendi
violation had occurred.  Counsel for the government also advised
the Court that, notwithstanding the petitioner's numerous viola-
tions of his Plea Agreement, she still planned to withdraw the
§851 Notice and to ask the Court to depart down to a 180-month
term of imprisonment pursuant to §5K1.1.  For his part, defense
counsel advised that he had counseled the petitioner to plead
guilty prior to the announcement of the Apprendi decision, but he
continued to believe that such advice was sound.

Next, the petitioner asked the Court whether the Apprendi
decision would allow him either to receive less than the 180-
month term recommended by the government, or to self-report to
his prison so that he could spend some additional time with his

---

[1]In Apprendi, the Supreme Court held that any factor other than a prior
conviction which increases the statutory maximum term must be alleged in the
indictment and proven beyond a reasonable doubt.

three children.  However, the Court advised the petitioner that
Apprendi would not preclude the imposition of any sentence en-
hancements which could be imposed under §851; and that the pre-
cise effect of Apprendi would be determined by future rulings of
the appellate courts.  The Court also advised the petitioner that
he would not be allowed to self-surrender or to obtain a bond
under any set of circumstances.  Consequently, at the conclusion
of that exchange, the petitioner conferred with his attorney and
told the Court that he wanted to proceed with his guilty plea.
The Court then re-affirmed its acceptance of that plea.

Thereafter, the Court asked several questions, in response
to which the petitioner reported that he had been given an ade-
quate opportunity to review his Pre-sentence Report with his
attorney; and that he had no objections to that Report.  The
Court then concluded that the petitioner's Offense Level was 33
and his Criminal History Category was VI, thereby exposing him to
a sentencing range of 235 to 293 months imprisonment.

Next, the Court denied defense counsel's Motion for Downward
Departure, concluding that the petitioner's criminal history
actually justified an upward, not downward, departure.  However,
the Court granted the government's motion for downward departure
based upon the petitioner's substantial assistance, and then gave
the petitioner the opportunity to speak on his own behalf.

During allocution, the petitioner essentially tried to make
light of his record, not fully taking responsibility for his

behavior.  That is, the petitioner told the Court that he simply had "just d[one] what [he] had to do in order to survive . . . ." Notably, however, the petitioner did not complain about any matters relating to his case or his counsel.

In any event, at the conclusion of that Hearing, the Court sentenced the petitioner to the recommended 180-month term of imprisonment.  However, the petitioner did not timely notice his appeal in this case.

Rather, on November 27, 2001, the petitioner filed a Motion to Vacate arguing several matters, including that counsel had been ineffective for his failure to take action upon his "insinu-at[ions]" that counsel should directly appeal his case.  Then, on November 29, 2001—that is, before his Motion to Vacate was re-solved, the petitioner filed a Notice of Appeal, which Notice was transmitted to the Fourth Circuit Court of Appeals.  Upon receipt of that Notice, the appellate Court appointed counsel for the petitioner.  Then, on December 19, 2001, appellate counsel filed a Supplemental Motion to Correct Sentence, expressly asking that a new Judgment be entered pursuant to <u>United States v. Peak</u>, 992 F.2d 42 (4th Cir. 1993); that the petitioner's other claims be dismissed without prejudice; and that the petitioner be given an opportunity to proceed on direct appeal.

Next, the government filed a Motion to Dismiss the petition-er's appeal as untimely filed.  On April 15, 2002, the govern-ment's Motion was granted, and the petitioner's Appeal was

dismissed.

Nevertheless, on April 30, 2002, this Court granted the petitioner's Motion to Vacate, but only for the purpose of allowing him to timely appeal his conviction and sentence. Next, the petitioner timely filed his appeal in the Circuit Court.

In his second appeal, the petitioner argued, <u>inter alia</u>, that his Rule 11 Hearing was inadequate; that the Court had incorrectly applied the Sentencing Guidelines; that his Motion for Downward Departure was erroneously denied; that his sentence was imposed in violation of the <u>Apprendi</u> ruling; that his plea agreement was invalid; that his sentence violated the Double Jeopardy clause; and that the prosecutor had engaged in misconduct. <u>See</u> <u>United States v. Daniels</u>, No. 02-4415, slip op. at 2 (Jan. 15, 2003).

Nevertheless, the Court of Appeals concluded that the petitioner had waived his right to appeal most of the foregoing matters under the terms of his Plea Agreement; and that, in light of the facts of this case, the subject waiver was valid and fully enforceable. <u>Id</u>. In addition, the appellate Court found that petitioner's cognizable claims, including his challenge to the validity of his Plea Agreement, were "baseless and unsupported." <u>Id</u>. at 3. Consequently, that Court affirmed the petitioner's conviction and sentence. <u>Id</u>. Following that ruling, on May 5, 2003, the petitioner returned here on the instant Motion to Vacate.

In this Motion, the petitioner alleges that he was subjected to ineffective assistance of counsel in four distinct ways. First, the petitioner claims that trial and appellate counsel both were ineffective for having failed to raise an Apprendi-based challenge to the Indictment and to the Court's imposition of the 180-month sentence which he received. More particularly, the petitioner complains that in light of the government's failure to specify the drug amounts with which he was charged, the Court lacked the authority to impose a 180-month term.

Second, the petitioner claims that trial counsel was ineffective for having failed to challenge the government's §851 Notice because his prior convictions could not subject him to any sentencing enhancements. Third, the petitioner argues that trial counsel was ineffective for having allowed him to stipulate to a specific drug quantity since the Indictment was subject to challenge under Apprendi. Last, the petitioner argues that trial counsel was ineffective at sentencing because he "induce[d]" him to enter into an "illusionary" Plea Agreement.

On June 10, 2003, the "Government's Response To Defendant's Petition [A]nd Motion For Summary Judgment" was filed. According to that document, the government asserts that the petitioner's Motion to Vacate should be summarily denied and dismissed because his Apprendi-based allegations have no merit and are foreclosed by relevant law; that his indirect challenges to the government's evidence are barred by his waiver of those matters pursuant to

his Plea Agreement; and, in any case, that he has failed to establish either deficient performance or prejudicial outcome in connection with any of his claims against counsel.

In addition to the foregoing, on June 17, 2003, the government supplemented its Response with an Affidavit from the petitioner's former trial counsel, Peter C. Anderson. By that Affidavit, Mr. Anderson asserts, inter alia, that after being appointed to represent the petitioner, he reviewed the government's file and learned that there were about 18 persons who claimed to have purchased from or sold drugs to the petitioner; that at least four of those persons reported having bought crack from the petitioner on numerous occasions in quantities "far greater than 500 grams . . . "; and that based upon such information, he did not believe there was a good faith basis to challenge the drug amounts which were proposed in the Plea Agreement.

Mr. Anderson's Affidavit also asserts that he did not seek to challenge the government's §851 Notice because it appeared that there was an adequate basis for such Notice and, in any event, the parties had agreed that the government would dismiss that Notice at the conclusion of the petitioner's case. In addition, the instant Affidavit asserts that it was not until after counsel had met with the petitioner to discuss the government's file, along with any possible defenses, witnesses and options they might have had, that the petitioner indicated his desire to

accept the Plea Agreement and avoid a trial.

On June 30, 2003, the petitioner filed his first "Traverse," in opposition to the government's Motion, taking issue with the argument that he was not affected by its §851 Notice. Rather, the petitioner argues that the Notice was the reason he decided to plead guilty. The petitioner also takes issue with the argument that <u>Apprendi</u> is not applicable in this case. Next, on August 21, 2003, the petitioner filed another "Traverse," reiterating and more fully explaining most of his earlier arguments.

Now, for its part, the Court has carefully reviewed all of these matters and determined that the petitioner is not entitled to any relief on his claims.

## II. <u>ANALYSIS</u>

### 1. <u>The petitioner's Apprendi-based claims against counsel are baseless</u>.

Although he initially begins his discussion of this claim as a challenge to the Court's subject matter jurisdiction, it appears from a careful reading of the Motion that the petitioner's first claim actually alleges that trial and appellate counsel were ineffective for having failed to argue that his sentence was imposed in violation of the then-recent ruling in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). However, as will be explained hereafter, this claim is wholly without merit.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitu-

tionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31.  If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

Further, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different.  <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under. . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id</u>., <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369

(1993).

Most importantly, a petitioner who alleges ineffective assistance following entry of a guilty plea has an even <u>higher</u> burden to meet. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. at 53-59; <u>Fields</u>, 956 F.2d at 1294-99; <u>and</u> <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir.), <u>cert. denied</u>, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

<u>Hooper</u>, 845 F.2d at 475 (emphasis added); <u>accord</u> <u>Hill v. Lockhart</u>, 474 U.S. at 59; <u>and</u> <u>Fields</u>, 956 F.2d at 1297.

In the instant case, at the time that the petitioner was charged with and pled guilty to the conspiracy offense, the well-settled law in this Circuit simply did <u>not</u> require the government to include drug amounts in its allegations. Rather, drug quantity was considered a sentencing factor, which the government only had to prove by a preponderance of the evidence. <u>See, e.g.</u>, <u>United States v. Dorlouis</u>, 107 F.3d 248,252 (4th Cir. 1997); <u>United States v. Fletcher</u>, 74 F.3d 49, 53 (4th Cir. 1996); <u>and</u> <u>United States v. Heater</u>, 63 F.3d 311, 322 (4th Cir. 1995).

Furthermore, even after the <u>Apprendi</u> ruling was announced, the Fourth Circuit continued to hold that proof of drug quantities which did not increase the statutory maximum term simply did not implicate <u>Apprendi</u>.  See,e.g., <u>United States v. General</u>, 278 F.3d 389, 393 (4ᵗʰ Cir.) (drug quantity not an element of the offense where sentence is less than statutory maximum), <u>cert. denied</u>, 536 U.S. 950 (2002).  In fact, even as late as 2002, the Fourth Circuit was construing the term "statutory maximum" from <u>Apprendi</u> as the maximum term which could be imposed upon any relevant judge-made findings.  See <u>United States v. Lewis</u>, 235 F.3d 215, 218-19 (4ᵗʰ Cir. 2000) (upholding the imposition of uncharged sentence enhancements which did not increase the sentence beyond that provided for by the statute of conviction); <u>United States v. Kinter</u>, 235 F.3d 192, 198-202 (4ᵗʰ Cir. 2000) (same), <u>cert. denied</u>, 532 U.S. 937 (2001).

Thus, based upon the status of the law and the facts of this case, neither the petitioner's trial nor his appellate attorney was deficient for choosing not to raise an <u>Apprendi</u> challenge in this case.  To put it simply, the petitioner's attorneys followed the law as it then existed.[2]  Therefore, any determination that counsel were deficient based upon the subject changes in the law

---

[2]Even though the petitioner is correct that the case of <u>Jones v. United States</u>, 526 U.S. 227 (1999) was decided before he was sentenced, that case was not construed as affecting whether or not drug quantities had to be alleged in the Indictment.  Therefore counsel had no reason to raise a challenge to the instant Indictment based upon that case.

would require a conclusion that attorneys are required not only to know the current status of the law, but also to predict the future of the law and correctly formulate strategies based upon such predictions.  Suffice it to say, however, the law requires no such extraordinary abilities from its practitioners.

Last, the petitioner's indirect challenge to the constitutionality of §841 also is baseless inasmuch as it is well settled that Apprendi did not render §841 unconstitutional.  See United States v. McAllister, 272 F.3d 228 (4th Cir. 2001).  Accordingly, this Court must flatly reject this first claim.

### 2.  **The petitioner's claim that counsel was ineffective in connection with the §851 Notice also is baseless**.

As to this second claim, the petitioner argues that his prior convictions were inadequate to have exposed him to a life sentence as a "Career Offender"; therefore, trial counsel was ineffective for having failed to challenge the government's §851 Notice.  However, even a cursory review of this matter reflects that the petitioner is mistaken as to the facts of his case.

In particular, the government's §851 Notice reported that the petitioner had two prior drug convictions--one sustained in February 1993 for possession with intent to sell and deliver cocaine, and one sustained in January 1997 for felony possession of cocaine.  So, while the petitioner is correct that under the §4B1.1 of the U.S. Sentencing Guidelines (§4B1.1) those prior

15

convictions likely would have been treated as related to the offense of conviction, thereby precluding their use for Career Offender purposes, that fact is irrelevant in this case.

To be sure, 21 U.S.C. §841(b)(1)(A), to which the government's §851 Notice related--not the Career Offender provisions-- provides that any person who is convicted of a violation thereunder "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ." Critically, unlike the Career Offender provisions, this statute does <u>not</u> put any limitation of the type of felony drug offenses which can be used to expose the petitioner to a term of life imprisonment.

Likewise, although the petitioner alleges that the Double Jeopardy Clause precluded the use of his 1993 felony drug conviction for §851 enhancement purposes because such conviction was preceded by the imposition of a drug tax which was levied against him under North Carolina's former drug tax statute, his own documentary exhibits show otherwise. That is, the documents which the petitioner submitted in support of that argument reflect that the drug tax actually was not made until <u>after</u> he was convicted on the related criminal charge. Thus, to the extent that the petitioner even had a colorable Double Jeopardy claim, that claim would have been against the 1994 assessment, not the 1993 conviction which was listed in the §851 Notice.

Moreover, the petitioner does not allege that he ever sought to challenge his 1993 conviction, as would have been necessary in order to render such conviction unavailable for §841 enhancement purposes.  In fact, the petitioner does not even allege that he advised trial counsel about the post-judgment assessment so that counsel could have researched the matter.

Furthermore, <u>Lynn v. West</u>, 134 F.3d 582, 593-94 (4th Cir. 1998)--the case which ruled that North Carolina's drug tax was a criminal penalty so as to preclude the State from both assessing the tax and pursuing a criminal prosecution for the same drugs-- was not decided until <u>after</u> the petitioner's 1993 conviction was imposed.  Consequently, it is not likely that trial counsel would have had any basis upon which to challenge the 1993 conviction even if he had been aware of the post-conviction tax.

In sum, for the purposes of §841 sentencing enhancements, it is irrelevant that--as the petitioner asserts--his 1997 felony drug conviction involved "a mere .67 grams [of] cocaine . . ."; that he only received a 6 to 8 month term of imprisonment for that conviction; that his 1993 conviction was followed by a 1994 drug tax assessment; or that §4B1.1 of the Guidelines might have precluded his being deemed a Career Offender on the basis of his prior convictions.  Rather, as trial counsel obviously under-stood, the critical facts surrounding this issue were that the petitioner had two prior felony drug convictions which had not been reversed, and he was charged with another felony drug of-

17

fense in violation of 21 U.S.C. §§841 and 846.  In light of those
facts, therefore, counsel had no basis upon which to challenge
the government's §851 Notice.

Last on this point, it has not escaped the Court's atten-
tion that the government withdrew the §851 Notice, thus ensuring
that the petitioner would <u>not</u> face an enhanced sentence on the
basis of either of his prior convictions.  Consequently, the
petitioner ultimately cannot demonstrate any deficiency or pre-
judice in connection with this issue.

### 3.  **The petitioner cannot prevail on his claim that counsel was ineffective for allowing him to stipulate to a drug quantity**.

As to this claim, the petitioner argues that trial counsel
was ineffective for having counseled him to stipulate to a drug
quantity when the Indictment failed to set forth any allegation
concerning a specific drug amount.  However, as was previously
explained in connection with the petitioner's first claim, the
decision to stipulate to a specific drug amount actually was a
reasonable and prudent defense strategy in this case.

First, to the extent that the petitioner is attempting to
challenge the Court's calculation of his sentence on the basis of
his involvement with 500 grams to 1.5 kilograms of crack, that
attempt cannot succeed.  That is, as already has been noted, un-
der the terms of his Plea Agreement, the petitioner waived his
right to challenge the calculation of his sentence.  Thus, since

18

the Fourth Circuit concluded that such waiver was valid and enforceable against the petitioner, he cannot proceed on this claim.  Daniels, No 02-4415, slip op. at 2.

Second, this Court already has settled the fact that at the time that the petitioner's case was being prosecuted, the law did not require that drug amounts be set forth in the Indictment as elements of the offense.  Accordingly, there was no reason why trial counsel should have discouraged the petitioner from stipulating to a specific quantity in light of the facts of this case.

Third, the information set out in the petitioner's Pre-Sentence Report tended to establish that the conspiracy in which he was involved had operated for approximately 10 years; that it had numerous participants in the Catawba, Iredell and Caldwell County areas of North Carolina; and that several of the petitioner's cohorts dealt in multi-kilogram quantities of cocaine and cocaine base, and were supplied from sources as far away as New York City.  For his part, the Report also showed that the petitioner was a street-level dealer who received and sold cocaine and cocaine base from numerous sources over an eight year period.

Consequently, but for his stipulation, the petitioner clearly could have been held accountable not only for the drugs with which he personally dealt, but also for those quantities with which his co-conspirators had dealt to the extent such amounts were reasonably foreseeable to him.  And, given the fact that the petitioner was able to obtain a vastly reduced sentence on the

basis of his having provided information to the government, the government likely would have had little difficulty in showing that the petitioner was aware of transactions involving far more drugs than the amount for which he agreed to stipulate.

Furthermore, the petitioner's argument that United States v. Rhynes, 218 F.3d 310 (2000) precluded the Court from sentencing him for involvement with anything besides the least punishable drug listed in the Indictment, i.e., marijuana, is misplaced. That is, the holding in Rhynes is inapplicable here because that case involved a jury trial where there was no special verdict concerning which drug the jury found the defendant to have dealt, not a guilty plea where there was admitted involvement with a specific drug. On this record, then, the petitioner cannot possibly demonstrate either a deficient performance or prejudice in connection with this claim.

### 4. **The petitioner's challenge to the validity of his Plea Agreement is foreclosed by the record and the Court of Appeals' decision**.

By his final claim, the petitioner argues that trial counsel was ineffective at sentencing because he "induce[d him] into signing and agreeing to an illusionary [] plea agreement wherein [he] was threatened with being tried as a three strike or habitual offender under 21 U.S.C. §851 . . . ." According to the petitioner, trial counsel misled him to believe that he would be exposed to a mandatory life term of imprisonment if he proceeded

to trial, so he pled guilty in order to avoid the risk of a life sentence.  However, this claim need not long detain the Court.

First, the petitioner's belief that he only faced a five year sentence in this case plainly is erroneous.  Second, the appellate Court already found that the petitioner's allegation that he somehow entered into "an illusionary plea agreement" was "baseless and unsupported."  <u>Daniels</u>, No. 02-4415, slip op. at 3. Third, this Court has determined that the government's §851 Notice properly was filed because the petitioner, in fact, was subject to a mandatory term of life imprisonment by virtue of his prior felony drug convictions.

Contrary to the petitioner's assertions, it was counsel's advice, coupled with his negotiation tactics, that put the petitioner in the position to cooperate and obtain a vastly reduced sentence.  Therefore, trial counsel was not deficient in connection with his advice concerning the petitioner's sentencing exposure.

### III.  <u>CONCLUSION</u>

The Court has carefully reviewed all of the pertinent documents and determined that the petitioner is not entitled to any relief on his claims.  Therefore, the government's Motion for Summary Judgment must be <u>granted</u>; and the petitioner's Motion to Vacate must be <u>denied</u> and <u>dismissed</u>.

## IV. ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.   That the government's Motion for Summary Judgment is **GRANTED;** and

2.   That the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

SO ORDERED.

Signed: November 17, 2006

Richard L. Voorhees
United States District Judge